UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MADISON C. LAMAR                                    CIVIL ACTION

VERSUS

JP MORGAN CHASE BANK, N.A.                          NO. 23-645-SDD-SDJ

RULING

Before the Court is a Motion to Dismiss (R. Doc. 8) filed by Defendant, JP Morgan Chase Bank (Chase). Because it believes Plaintiff has not alleged facts sufficient to state a claim under the Louisiana Uniform Commercial Code,[1] Chase seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In this lawsuit, Plaintiff seeks reimbursement from Chase for $250,000—the remaining amount of funds stolen from his Chase checking account by an unidentified third-party. In early 2023, Plaintiff first discovered "nefarious charges in his personal checking account" that "totaled $300,000 USD from various merchants such as Neiman Marcus, Home Depot, Regions Bank, Nordstrom Rack, and various other enterprises." (R. Doc. 1-1 at 3); (R. Doc. 21 at 10) ("unauthorized transactions that occurred due to their security systems being hacked"). After reporting the charges to Chase in 2023, it only reimbursed Plaintiff for $50,000—the amount of nefarious charges reported within the 60-day deadline contained in the Deposit Account Agreement between Chase and

---

[1] Louisiana has "'adopted the [Uniform Commercial Code] . . . to harmonize the commercial law of Louisiana with that of the other states.'" *Squeeze Me Once, LLC v. SunTrust Bank*, 630 F. Supp. 3d 763, 772 (M.D. La. 2022) (quoting *Cromwell v. Com. & Energy Bank of Lafayette*, 464 So. 2d 721, 730 (La. 1985)). Courts in Louisiana, therefore, rely on case law interpreting the UCC and similar state statutes when considering a cause of action under the LUCC. *See Specialized Loan Servicing, LLC v. January*, 119 So. 3d 582, 588 (La. 2013); *Cromwell*, 464 So.2d at 730 ("examine the jurisprudence of other states . . . ." when interpreting the LUCC).

1

Plaintiff. (R. Doc. 8-4 at 13) (for any erroneous or contested electronic funds transfers, the Agreement provides: "We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared."). Chase refused to reimburse Plaintiff for the remaining amount because they were not reported within 60 days of Plaintiff's receipt of the bank statement on which they first appeared, as required by the Agreement.

Finding this deadline "arbitrary and capricious" (R. Doc. 21 at 3), Plaintiff sued Chase under Louisiana's Uniform Commercial Code for the $250,000 in "charges incurred by the unauthorized signature[s]." (R. Doc. 1-1 at 9). Relying on LUCC § 10:4-406, Plaintiff alleges:

> This is a checking account that was hacked, the Defendant's firewall system failed and did not protect [Plaintiff's] funds. They should not be allowed to shorten the prescriptive period established by law for a customer to discover and report unauthorized signatures. . . . Defendant had a responsibility to protect his funds, instead they failed to do so.

(R. Doc. 1-1 at 4, 7); (R. Doc. 1-1 at 8, 9) (citing La. Rev. Stat. § 10:4-406(c) (customer must exercise reasonable promptness in examining statement to determine if payment was not authorized because of alteration of an "item" or unauthorized signature on an "item") and § 10:4-406(f) (customer who does not discover and report unauthorized signature or alteration on the item within one year "is precluded from asserting against the bank the unauthorized signature or alteration")).

In response, Chase moves to dismiss Plaintiff's claims under LUCC § 10:4-406. Relevant here, Chase argues Plaintiff cannot state a claim because he acknowledges that he failed to report the nefarious charges within 60 days, as required by the Agreement. In his Opposition, Plaintiff reasserts the allegations of his Complaint and

alternatively asks that the "Court allow him to [a]mend his Original Complaint to add [an] LUCC claim" for conversion under La. Rev. Stat. § 10:3-420. (R. Doc. 21 at 14).

The Court has thoroughly reviewed the Complaint, the parties' filings, the Deposit Account Agreement,[2] as well as the applicable law. For the reasons outlined below, the Court questions whether Plaintiff has stated a claim for relief under LUCC § 10:4-406, but not for any of the reasons presented by the parties. Because both sides appear to have missed the mark, the Court will **deny** the Motion to Dismiss (R. Doc. 8) **without prejudice** and allow Plaintiff one opportunity to amend.

Plaintiff brings his cause of action under LUCC §§ 10:4-406, the article applicable to "items." (R. Doc. 1-1 at 6-8). The LUCC defines an "item" as "an instrument or a promise or order to pay money handled by a bank for collection or payment." La. Rev. Stat. § 10:4-104(a)(9). An "instrument" is a "signed writing that orders or promises payment of money," an "order" is a "written instruction to pay money" and a "promise" is a "written undertaking to pay money," both of which are signed by the person making the payment. La. Rev. Stat. §§ 10:3-103(6), (9); La. Rev. Stat. § 10:3-104 (UCC Comment no. 1). And while the Complaint describes the transactions as "unauthorized signatures" (R. Doc. 1-1 at 4), and quotes cases on "instrument[s]," "forged signature[s]," and "forged instrument[s]" (R. Doc. 1-1 at 7), the LUCC on which Plaintiff relies does not appear applicable considering the allegations of the Complaint.

---

[2] Plaintiff opened the checking account in 2017 and the unauthorized transactions at issue occurred in 2022. For that reason, both the 2017 and 2022 Deposit Account Agreements are attached to Chase's Motion to Dismiss. (R. Doc. 8-3) (2017 version); (R. Doc. 8-4) (2022 version). However, the relevant provisions of the Agreement remain unchanged between 2017 and 2022. (R. Doc. 8-3 at 21) (unauthorized electronic fund transfers require 60 days' notice and unauthorized signatures require 30 days' notice); (R. Doc. 8-4 at 13, 18) (same). Finally, the Court may consider the Agreement in connection with the Motion to Dismiss, as it is "central to the claim and referenced" throughout the Complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Plaintiff alleges that someone "hacked" into his "online [checking] account" and made "unauthorized [retail] transactions" totaling $300,000. (R. Doc. 1-1 at 3); (R. Doc. 21 at 12); (R. Doc. 21 at 10) ("unauthorized transactions that occurred due to [Chase's] security systems being hacked"). And his Opposition further clarifies this case is not about "checks" but the "hacking of digital accounts." (R. Doc. 21 at 10); (R. Doc. 21 at 12) ("matter does not involve a lost checkbook, or a checkbook handed to an employee, this matter involve[s] an online account getting hacked and funds taken."). These allegations do not concern "unauthorized signatures" on "items" — i.e., written instruments, promises or orders to pay — that might fall within the LUCC. *See Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 553 n.4 (5th Cir. 2008) ("[Section] 10:4–406 applies by its terms to 'an item' which is defined as a written promise or order to pay money"); *Robinson v. Whitney Nat. Bank*, 709 So.2d 937, 940 (La. App. 4 Cir. 3/4/98) ("[T]he customer responsibility imposed in La. R.S. 4–406(1) [is] predicated on there being items bearing a signature or otherwise indicating upon what authority the bank may have acted, that are susceptible of being examined by the customer to determine their propriety. The requirement of an item is clearly not satisfied by a mere debit entry on the bank's statement."); *Baker v. First Am. Nat. Bank*, 111 F. Supp. 2d 799, 805 (W.D. La. 2000) (An "item" in most "situations is a check, but an item . . . is not limited to checks. . . . an item can include bank checks, cashier's (teller's checks), notes, and non-negotiable instruments payable at the bank. The CD, then, may be an item.").

Rather than items bearing a signature, the transactions at issue were "effected entirely by electronic means." *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 193 F. Supp. 3d 1294, 1306 (S.D. Fla. 2016) ("Under the UCC, the term 'item' does not include

4

transactions effected entirely by electronic means."); *Binns v. BB & T Bank*, 377 F. Supp. 3d 487, 492 (E.D. Pa. 2019) ("Article 4 [of the UCC] does not contemplate electronic withdrawals . . . . Article 4 was meant to apply only to traditional written instruments, rather than electronic means of transferring and withdrawing funds.").

"[C]onsumer payments that are made electronically . . . are covered by a separate federal statute, the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 et seq." *Patco Const. Co. v. People's United Bank*, 684 F.3d 197, 207 n.7 (1st Cir. 2012); *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1182 (S.D. Cal. 2010) ("The electronic transfer of funds by consumers to purchase goods (at brick and mortar stores or over the internet) falls within the plain language of the [EFTA] and its governing regulations."). "Under the [EFTA], an 'electronic fund transfer' includes 'any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal . . . so as to order, instruct, or authorize a financial institution to debit or credit an account.'" *Dorsey v. U.S. Bank Nat'l Ass'n*, 2012 WL 13001917, at *2 (M.D. La. Apr. 2, 2012) (quoting 15 U.S.C. § 1693a(7)); *see also* 15 U.S.C. § 1693a(12) ("'Unauthorized electronic fund transfer' means an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit ... "); 12 C.F.R. § 1005.2(m) (same).

Both parties concede the Agreement's 60-day notice provision for unauthorized electronic fund transfers, rather than the 30-day provision for unauthorized signatures, applies to the transactions at issue. (R. Doc. 8-1 at 8 n.2) ("Chase will accept as true Plaintiff's allegations that the transactions . . . are the type of unauthorized transactions

that are subject to the 60-day notification period" for EFTs.). Despite this, and the nature of the unauthorized transactions, neither party addresses whether the transactions actually fall within the definition of "item" under the LUCC.

Because this crucial issue is not properly before the Court, and because Plaintiff's Opposition includes a request to "amend his Original Complaint" to add claims, the Court finds it would be most efficient to proceed, as **ORDERED** below:

- Plaintiff is **permitted leave** to file an **Amended Complaint** within **21 days** of this Order; and

- Chase's Motion to Dismiss (R. Doc. 8) is **DENIED without prejudice**, and may be refiled, at Chase's discretion, following Plaintiff's Amended Complaint.

Signed in Baton Rouge, Louisiana, on September 24, 2024.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**